# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

LINDA C. LARA,       )
                    )
      Plaintiff,      )
                    )
v.                   )     Case No. CIV-12-1249-L
                    )
CAROLYN W. COLVIN,[1]   )
Commissioner, Social Security )
Administration,       )
                    )
      Defendant.     )

## REPORT AND RECOMMENDATION

Linda C. Lara (Plaintiff) has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental income payments under the Social Security Act. United States District Judge Tim Leonard referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and it is now before the undersigned Magistrate Judge. Upon review of the pleadings, the administrative record (AR), and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1]     Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

## I.    Administrative proceedings.

In support of her application for benefits, Plaintiff alleged that her "[b]ipolar disorder and anxiety" became disabling on November 2, 2006. AR 128-35, 154. The Social Security Administration (SSA) denied Plaintiff's claim. *Id.* at 45-55. At her request, an Administrative Law Judge ("ALJ") conducted a January 27, 2011 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified. *Id.* at 29-42. In his June 2011 hearing decision, the ALJ found Plaintiff is not disabled within the meaning of the Social Security Act. *Id.* at 28. The SSA's Appeals Council declined Plaintiff's request for review. *Id.* at 1-6. Plaintiff, through counsel, now seeks review of the Commissioner's final decision in this Court. Doc. 1.

## II.    Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure,

Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III.  Analysis.

Plaintiff presents two claims on judicial review. First, she contends that the ALJ improperly rejected the state agency medical expert's opinion. Second, she challenges the ALJ's credibility findings.

### A.    Standard of review.

This Court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quotation omitted). In determining whether substantial evidence exists, the Court "will not reweigh

the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

Further, the harmless-error doctrine applies in social security cases "where, based on the material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

**B.    The ALJ's findings.**

After finding that Plaintiff had not engaged in substantial gainful activity since October 1, 2009, the ALJ found that Plaintiff had severe impairments due to "Status post L3-L4 laminectomy, discectomy and foraminotomy; bilateral L-4-4 laminectomy, discectomy, and foraminotomy; Bipolar Disorder; and History of Polysubstance Abuse." AR at 18.  In setting out his residual functional capacity (RFC) [2] finding, the ALJ determined that Plaintiff's mental impairment had resulted in mild restrictions of daily living activities, mild difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of extended duration.  *Id.* at 19-20 (citing 20 C.F.R. §§ 404.1520a, 416.920a).  After concluding that Plaintiff had no past relevant

---

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations."   20 C.F.R. § 416.945(a)(1).

work, the ALJ concluded that she could perform as a housekeeper/cleaner, fastfood worker, and cafeteria attendant, recognizing that each called for a specific vocational preparation level 2. *Id.* at 28, 40-41. As such, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. *Id.*

## C. The ALJ's consideration of the state agency medical expert's opinion.

Plaintiff contends that the ALJ selectively considered — if not ignored — the state agency medical expert's opinion, rejecting one vital aspect. Doc. 15, at 9-10. That expert, Dr. Sally Varghese, completed a mental RFC assessment, first providing the following summary conclusions that Plaintiff has marked limitations in:

1. understanding and remembering detailed instructions;

2. her ability to carry out detailed instructions; and

3. interacting appropriately with the general public.

AR 290-91. Dr. Varghese's functional capacity assessment then stated:

Claimant can perform simple tasks with routine supervision. Has problems due to mood disorder;

Claimant can relate to supervisors and peers on a superficial work basis; and

Claimant can adapt to a work situation.

*Id.* at 292.   As to Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, Dr. Varghese indicated that Plaintiff was not significantly limited.   *Id.* at 291.   Similarly, Dr. Varghese noted no significant limitation related to Plaintiff's ability to get along with coworkers or peers without distracting them.   *Id.*   And, Dr. Varghese found that Plaintiff could maintain socially appropriate behavior without significant limitation.   *Id.*

Plaintiff contends that "[t]he ALJ did not include any restriction in [Plaintiff's RFC] addressing Dr. Varghese's opinion that [Plaintiff] could only 'relate to supervisors and peers on a superficial work basis.'"   Doc. 15, at 10. As such, she argues the ALJ's RFC assessment cherry picked Dr. Varghese's medical opinion, committing reversible error under *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability").   The undersigned finds that the alleged error is not reversible.

### 1.   The law.

ALJs must consider all medical opinions in the record.   *See* 20 C.F.R. § 416.927(c).   "State agency medical and psychological consultants and . . . other medical specialists are highly qualified" and serve as "experts in Social

Security disability evaluation." *Id.* § 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . and other medical specialists as opinion evidence," and "evaluate [their] findings using the relevant factors in paragraphs (a) through (d) of [§ 416.927]." *Id.* § 416.927(e)(2)(i), (ii).

"Unless a treating source's opinion is given controlling weight," the ALJ "must explain in [its] decision the weight given to the opinions of a State agency medical or psychological consultant . . . or other medical specialist." *Id.* § 416.927(e)(2)(i), (ii); *see also* Social Security Report 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (observing that ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions").

### 2. Application of the law.

The ALJ noted he gave "significant weight" to Dr. Varghese's opinion. AR at 26. The ALJ concluded, after "careful consideration of the entire record," that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following relevant exceptions:

- she may be required to remember and understand very short and simple instructions and carry out simple, routine tasks; and

- she may be required to sustain concentration necessary for unskilled work.

AR at 23. Plaintiff is correct (and the Respondent Commissioner agrees) that the ALJ did not include a separate limitation for relating to supervisors and peers on a superficial basis, nor did he explain why he did not include the limitation. Doc. 15, at 8; Doc. 16, at 4. But, even assuming that the ALJ erred in this respect, it does not conclude the inquiry.

Exercising common sense in reviewing the ALJ's decision requires the Court to conduct a harmless error analysis. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). If, "based on material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way," the error is harmless. *Allen*, 357 F.3d at 1145.

The ALJ found, based on the vocational expert's testimony, that Plaintiff could work as an unskilled Housekeeper, a job existing in significant numbers. AR 27. This job has a specific vocational preparation rating of two, requiring "'little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Chavez v. Barnhart*, 126 F. App'x 434,

436 (10th Cir. 2005) (quoting 20 C.F.R. § 416.968(a)).[3]   As unskilled work, it also "ordinarily involve[s] dealing primarily with objects, rather than with data or people."   Social Security Ruling 85-15, 1985 WL 56857, at *4 (1985). More importantly, the Housekeeper job requires no talking and even the necessity of "taking instructions-helping" is "not significant."   DOT, 323.687-014, 1991 WL 672783.[4]   Consequently, the undersigned finds no evidence that the Housekeeper job requires relating to supervisors and peers on a more than a superficial basis.   So, because the ALJ would not have

---

[3]   To the extent Plaintiff challenges the adequacy of the ALJ's hypothetical questions, she raises that only in her reply brief, so the undersigned will not consider it here.   *See Montoya v. Apfel*, No. 99-2156, 2000 WL 556582, at *1 n.3 (10th Cir. May 8, 2000) (unpublished op.) (recognizing district court's refusal to consider an issue raised for the first time in a reply brief and holding the issue waived "because the issue was not before the district court").

[4]   Plaintiff misinterprets the DOT code, arguing that the Housekeeper job includes a "Level 8 people category."   Doc. 17, at 8.   But after noting "People: 8 – Taking Instructions – Helping," the DOT states "N-Not significant."   DOT, 323.687-014, 1991 WL 672783.   Additionally, even if the DOT could be interpreted as assigning a "Level 8 people category" to the Housekeeper job, that category requires only the ability to attend "to the work assignment instructions or orders of supervisor."   Doc. 17, at Attach. 3, at 3.   The record supports Plaintiff's ability to take instructions.   Indeed, Plaintiff admits that Dr. Varghese concluded that she could "perform routine simple tasks with routine supervision."   Doc. 15, at 9.   Moreover, Dr. Varghese noted no significant limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, AR 291, and Dr. G. Michael Strickland indicated that Plaintiff could "remember, comprehend, and carry out simple instructions on an independent basis."   *Id.* at 23, 236.

found that Plaintiff is disabled based on her ability to perform the job of unskilled Housekeeper even if he *had* included a limitation that she could only relate to supervisors and peers superficially, any error was harmless. *Allen*, 357 F.3d at 1145.

### D. Credibility analysis.

Next, Plaintiff challenges the ALJ's credibility determination arguing that the ALJ did not apply the correct legal standard in linking his credibility findings to the evidence, as *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995), requires. Then, Plaintiff challenges the ALJ's credibility determination on the ground that the evidence does not support it. She maintains the ALJ's finding was "completely erroneous and inadequate." Doc 15, at 13. She contends that ALJ merely summarized the evidence, did not provide any valid explanation for his finding, and did not base it on substantial evidence. *Id.* at 14. Here, the ALJ's linking of his findings to the evidence and his view of the evidence were reasonable.

### 1. Application of the standard of review to credibility findings.

On review, this Court generally considers an ALJ's credibility determination binding, subject to reversal only when the evidence is insubstantial. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990);

*Wilson*, 602 F.3d at 1144. Indeed, the ALJ has an "institutional advantage" in making credibility determinations. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *Id.*

An ALJ must closely and affirmatively link his credibility findings to substantial evidence as a conclusory finding is insufficient. *Kepler*, 68 F.3d at 391. But, a "formalistic factor-by-factor recitation of the evidence" is not required. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In fact, "[i]n making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements." *See* Social Security Ruling 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." *Id.* So, an ALJ's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination. *Id.*

### 2. The law.

The standard for evaluating the pain symptom's effects on a claimant's ability to work is well established. "A claimant's subjective allegation of pain

is not sufficient in itself to establish disability." *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004). The ALJ must consider (1) whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. *Luna v. Bowen*, 834 F.2d 161, 163-65 (10th Cir. 1987).

"When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities." Social Security Ruling, 96-7p, 1996 WL 374186, at *1. Some factors that may be considered in assessing the credibility of a claimant's statements about the effects of symptoms include:

(1)     the claimant's daily activities;

(2)     the location, duration, frequency, and intensity of pain or other symptoms;

(3)     factors that precipitate and aggravate the symptoms;

(4)     the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms;

(5)     treatment, other than medication, the claimant has received for relief of pain or other symptoms;

(6)     any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

(7)     any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3; *see also Luna*, 834 F.2d at 165-66; *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other relevant factors including "frequency of medical contacts, . . . subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence").

### 3.     Application of the law.

The ALJ stated:

After consideration of the evidence [I] find[] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC].

AR at 26.   In making this determination, the undersigned finds that the ALJ

discussed Plaintiff's testimony and the record regarding her physical and mental abilities and limitations, pain, daily activities, and medical treatment.

For example, the ALJ considered Plaintiff's testimony that she was unable to keep her 2009 job at an animal shelter because she could not lift heavy bags or animals due to back pain. *Id*. at 34. She stated this pain also precluded her from carrying her children, and limited her ability to play with them. *Id*. at 35. She testified she suffers weekly anxiety attacks, mania-type experiences several times a week, and Plaintiff also stated that she is unable to sit or stand for more than 10-15 minutes. *Id*. at 34, 37. She does not sleep "a whole lot" at night, but dozes off for four-to-five hours a day. *Id*. at 38. She also testified that when she felt depressed, she did not go to work. *Id*. at 34.

As to daily living activities, the ALJ noted that Plaintiff reported she takes care of her children, plays with them, reads to them, and cooks for them. AR 19. She also cares for pets. *Id*. She prepares her own meals weekly and grocery shops about once a month for two to three hours. *Id*. The ALJ noted that Plaintiff testified she takes care of "everything" in her house and yard work. *Id*. The ALJ also noted that Plaintiff's mother confirmed that Plaintiff cares for her children and pets. *Id*. at 19. Plaintiff's mother also stated she must tell her daughter to shower and that someone must

14

accompany Plaintiff due to her anxiety attacks. *Id*.

The ALJ also found that Dr. Darrell Lynch (the psychological consultative examiner), stated that Plaintiff's grooming and hygiene were "both good" when she reported for her psychological consultative examination. *Id*. He confirmed that Plaintiff reported taking care of her home, cooking, cleaning, and children, but that on days she is depressed she does not "get much done at all." *Id*. Plaintiff told Dr. Lynch that she wanted to work, but that her husband encouraged her to apply for disability benefits, given her difficulties in keeping a steady job. *Id*.

The ALJ also noted that Plaintiff reported that she gets along fine with family, friends, neighbors, and others. *Id*. at 20. But, Plaintiff indicated she does not like being told what to do, resulting in her loss of various jobs. *Id*. Dr. Lynch observed that Plaintiff "seems to get into disagreements with bosses or supervisors and as a result does not go back." *Id*.

The ALJ observed that in her Adult Function Report, Plaintiff stated that her bi-polar disorder and anxiety limit her ability to work, because she gets angry and depressed easily. *Id*. at 25. She also indicated that she could walk a block but then needed to rest for thirty minutes — her mother indicated as much, but thought Plaintiff need only rest a few minutes. *Id*. at 25. Plaintiff also indicated that her conditions do not affect any other

physical ability. *Id.* Plaintiff's mother stated that Plaintiff's conditions affect her ability to lift, stand, walk, squat, bend, kneel, climb stairs, sit and reach. *Id.*

Plaintiff contends that the ALJ did not consider her attempts to seek medical treatment or the objective medical evidence in the record. She is incorrect. The ALJ reviewed Plaintiff's mental and physical health treatment in detail. The ALJ noted that in December 2007, Dr. William Holloway at the Taliaferro Community Mental Health Center diagnosed Plaintiff with mood disorder and advised her to seek substance abuse counseling. *Id.* at 21. He concluded that all of the following were within normal limits: memory, cognition, affect, thought process and contest, attention, concentration and judgment. *Id.*

Further, the ALJ stated that in April 2008, Plaintiff was diagnosed with bipolar disorder, not otherwise specified. Plaintiff reported that while on her medical regimen, she does everything she is supposed to do, but her motivation is decreased. *Id.* The evaluator concluded "with appropriate medication compliance, Linda's prognosis is high." *Id.* Plaintiff reported that she last smoked marijuana in early April as well. *Id.*

The ALJ reviewed Dr. Strickland's treatment of Plaintiff. *Id.* at 21-23, 27. Dr. Strickland, who prescribed Plaintiff psychotropic medications, stated

that on July 8, 2008, Plaintiff reported that "she's leveled out pretty well" and did not want a medication change at that time. *Id*. at 21, 251. Dr. Strickland noted that Plaintiff reported no complaints in July 2008, and diagnosed her with bipolar disorder, not otherwise specified, and polysubstance dependence (primarily THC). *Id*. at 22. Then, in August and November of that year, Dr. Strickland reported that Plaintiff was fully competent to be discharged to her own custody. *Id*. He noted no evidence of a psychotic process. *Id*. Also in November 2008, Dr. Strickland reported Plaintiff seemed content and was very stable. *Id*.

The ALJ noted that in April 2009, Plaintiff was diagnosed as above, and also with anxiety disorder. *Id*. Plaintiff reported her long history of substance abuse. *Id*. The ALJ noted that Dr. Strickland indicated Plaintiff was not making her appointments and went off her medication. *Id*. The ALJ also noted that Dr. Strickland did not specifically address the "negative impact" of Plaintiff's failure to adhere to the prescription regimen. *Id*. at 27. And, the Taliaferro Community Mental Health Center treatment team's November 2009 summary stated that "with proper medication compliance and soci[al] integration, [Plaintiff's] prognosis is fair." *Id*. at 23, 239.

The ALJ also considered that in November 2009, Dr. Strickland reported that he expected "little recovery" and that Plaintiff would likely need

lifetime medication and treatment. *Id.* at 23, 236. That said, Dr. Strickland also concluded Plaintiff could remember, comprehend, and carry out simple instructions on an independent basis. *Id.* at 23, 236. She had linear thought processes and her insight and judgment were fair. *Id.* at 23, 236. And, Plaintiff retained the ability to think, reason, and respond. *Id.* at 23, 236.

Finally, the ALJ noted that Dr. Lynch recognized Plaintiff's history of difficulty functioning in a structured work environment, suggesting a possibility of some personality disorder features. *Id.* at 23. He diagnosed Plaintiff with major depression, recurrent type, and childhood sexual abuse by history. *Id.* The ALJ noted that Dr. Lynch never documented that Plaintiff had limitations or restrictions stemming from her mental impairments. *Id.* at 26.

The ALJ also reviewed Plaintiff's physical impairments, noting that after her August 2005 back surgery, she recovered well, and did not seek further treatment for her back pain until October 15, 2010. *Id.* at 24. She did report that she had received pain relief prescriptions for her back before October 2010, but that she did not follow the regimen. *Id.*

The ALJ reviewed the treatment Plaintiff sought:

- On November 5, 2010, Dr. Stephen Ofori examined Plaintiff for

her low back pain, and noted that the flexion and extension motion of her lumbosacral spine was moderately reduced and she could tolerate straight-leg raising to only about 30 degrees on the left and 45 degrees on the right. *Id.*

- On December 21, 2010, Plaintiff underwent surgery for an L3-L4 laminectomy, discectomy, and foraminotomy. *Id.* at 25.

- When released on December 23, 2010, Plaintiff was in "improved condition" and was prescribed Lortab, Valium, and Doxycycline. *Id.*

- During a post-operative follow up in January 2011, Dr. Ofori encouraged Plaintiff to increase her activities. *Id.* at 25.

- Two months later, he prescribed exercises to continue strengthening Plaintiff's back, and anticipated that she would be unable to work for the next three months. *Id.*

- He also continued her prescriptions for pain relief noting Plaintiff did not report any lower extremity pain or parasthesias. *Id.*

The ALJ noted that neither Dr. Ofori nor Dr. Abdallah Dawod (who established care in October 2010), ever documented that Plaintiff had limitations or restrictions that would interfere with or preclude her ability to work (apart from the three months as noted). *Id.* at 26.

After considering the relevant factors, and in relying on the record as a whole, the ALJ concluded that Plaintiff's impairments caused some of her reported pain and discomfort, but that they did not amount to *disabling* pain. *See id.*; *Keyes-Zachary*, 695 F.3d at 1167. The ALJ sufficiently linked his evaluation of Plaintiff's credibility to the above substantial record evidence.

Though he did not expressly indicate which parts of Plaintiff's testimony he found not credible, a common-sense reading of the opinion shows that he clearly adduced that Plaintiff's repeated noncompliance with medication and treatment regimen affected her prognosis. AR 27.

"Contrary to Plaintiff's view, . . . *Kepler* does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls*, 206 F.3d at 1372. "[A]lthough the ALJ may not have identified any specific incredible statements as part of his evaluation of [Plaintiff's] hearing testimony, his approach performed the essential function of a credibility analysis by indicating to what extent he credited what she said when determining the limiting effect of her symptoms." *Keyes-Zachary*, 695 F.3d at 1170.

## VII. Recommendation and notice of right to object.

For the reasons discussed above, the undersigned recommends that the Commissioner's decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by the 16th day of December, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives

their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 26th day of November, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE